## Anderson, Bicknell & Company, Appellees, v. Kaskaskia Live Stock Insurance Company, Appellant.

1. INSURANCE, § 120*—*how policy construed.* The language of an insurance policy should, in case of doubt, be construed most strongly against the company.

2. INSURANCE, § 439*—*how policy requiring prompt notice of sickness of animal construed.* A clause in a policy of insurance on a stallion, requiring prompt notice of sickness to be given the insurer, *held* to merely require notice of the sickness which actually caused the stallion's death.

Appeal from the Circuit Court of Moultrie county; the Hon. FRANKLIN H. BOGGS, Judge, presiding. Heard in this court at the April term, 1915. Affirmed. Opinion filed October 13, 1915.

CHAFEE, CHEW & BAKER, for appellant.

E. J. MILLER, for appellees.

MR. JUSTICE GRAVES delivered the opinion of the court.

This is an appeal from a judgment for six hundred dollars against appellant in an action of assumpsit on a policy of live stock insurance, insuring appellees against loss of a certain stallion called "Quinet" by death from disease, accident, fire and lightning. The policy contained the following stipulation:

"That in the event of said animal or animals' sickness, or an accident, arising from any cause whatever, it shall be the duty of the insured to immediately procure the services of a veterinarian, and use every possible means to save the life of said animal or animals. NOTICE OF SICKNESS OR ACCIDENT MUST BE GIVEN TO THE HOME OFFICE AT SHELBYVILLE, ILLINOIS, DIRECT, AND NOT THROUGH AGENTS, which notice shall be by telegram or telephone and confirmed by letter within twenty-four hours thereafter. The failure to perform any of

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the requirements above mentioned as embodied in this paragraph, if death should ensue, shall release this company from any and all liability under the policy.''

While the policy was in force and on June 27, 1914, the horse Quinet became sick with laminitis. On July 13, 1914, he died of tetanus.

To the declaration appellant filed the plea of general issue and two special pleas. By the special pleas appellant attempted to interpose the breach of the clause of the policy above quoted as a defense. A demurrer to both of these special pleas was sustained because it was not alleged therein that the company was not notified of the sickness that resulted in the death of the horse. The issues made up by the declaration and plea of the general issue were tried by a jury. Whether the demurrer to the special pleas was properly sustained depends upon the construction that should be given to the clause of the policy above quoted.

Appellant insists that the proper construction of it should be that a failure to give notice of the sickness of an insured animal releases the insurance company from all liability under the policy, even though the animal should die from some other cause disconnected with that sickness, while appellees insist the company is not released unless death ensue from or as a result of a sickness of which the company was not notified.

That language contained in insurance policies should in case of doubt be construed most strongly against the company who worded them is too well settled to need the citation of authority. The doubtful language in the clause under consideration is ''the failure to perform any of the requirements above mentioned as embodied in this paragraph'' (referring to the notice of sickness therein provided for) ''if death should ensue,'' shall release this company from any and all liability under the policy. The release of the company in case notice is not given is conditional on the further

fact that death shall ensue. The definition of the word "ensue" in Webster's New International Dictionary is: "To follow; to come afterward; to follow as a consequence or in chronological succession; to result; as, an ensuing conclusion or effect; the year ensuing." We think the words "if death should ensue" as used in this policy clearly mean, if death follows as consequence. Aside from the definition of the words, the context to our minds clearly shows that such was the sense in which those words are there used. The clause reads: "That in the event of said * * * animal's sickness * * * from any cause whatever, it shall be the duty of the insured to immediately procure the services of a veterinarian, and use every possible means to save the life of said animal * * *." Manifestly that means to save the life of that animal from the sickness with which it is then afflicted, not some sickness with which it may at some later date suffer. Then follows the provision for notice and then comes the clause: "If death should ensue," clearly referring back to the death which every possible means is to be used to prevent. This policy insured against loss *by death* from disease, accident, fire and lightning. Colic is a disease. If the interpretation of this contract insisted upon by appellant should prevail, and the horse should have the colic for an hour and get well of it, no notice of it being given the company, and six months later it should be struck by lightning and killed, the owner could not recover because the company had not received notice of the attack of colic. A mere statement of the situation shows the absurdity of such a construction.

We think the demurrer was properly sustained.

Notwithstanding the fact that the demurrer was sustained, the defense relied on at the trial was the same appellant sought to interpose by its special pleas, as

is shown by the following stipulation made part of the bill of exceptions:

"It is stipulated by and between the parties hereto that defendant will not contest the value of the horse as shown in the proof of loss and does not contest the proof of loss; but that its defense is based upon the lack of notice on account of sickness."

The contention of appellant here on the question of appellees' right to recover on the evidence in the record is the same as already referred to on the question of the sufficiency of the special pleas. The evidence shows that notice was duly and promptly given the company when the horse was stricken with tetanus, and it is not contended here that if the horse had not been sick before that time the notice would be insufficient, but it is strenuously insisted as before that notice should have been given when the horse was first afflicted with laminitis, and that as the evidence fails to show such notice, appellees are not entitled to recover. What has already been said as to the proper construction of the clause of the policy requiring notice in case of sickness applies here and need not be repeated.

The evidence shows without dispute that the horse died of tetanus and not of laminitis and that tetanus is not caused by laminitis; that laminitis is an inflammatory condition and that tetanus is a germ disease. There was evidence tending to show that the horse had fully recovered from laminitis before he was stricken with tetanus. The jury were explicitly instructed that they must find that to be true before they could find the issues for the plaintiffs. Their verdict is therefore a finding that the horse had completely recovered from laminitis before he was stricken with tetanus.

We are not prepared to say the verdict is contrary to the weight of the evidence.

Something has been said by appellant in their argu-

ment about the sufficiency. of the proof of loss and of the right of the company to cancel the policy, but those questions have been eliminated by the stipulation above quoted.

The rulings of the court on the admission and exclusion of the evidence and on the giving, modifying and refusing of instructions were in accord with the views here expressed. The judgment is therefore affirmed.

*Judgment affirmed.*